UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS DERRELL SMITH,

        Plaintiff,                      CIVIL ACTION NO. 14-cv-12000

       v.                             DISTRICT JUDGE STEPHEN J. MURPHY, III

COMMISSIONER OF              MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Marcus Derrell Smith seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 16). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 14) be DENIED and Defendant's Motion for Summary Judgment (docket no. 16) be GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income with a protective filing date of July 28, 2009, alleging disability beginning the same day due to the human immunodeficiency virus (HIV), arthritis of the lower back and knee, high blood pressure, a learning disability, and trouble seeing out of his left eye. (TR 85, 160-62, 183.) The Social Security Administration denied Plaintiff's claims on January 26, 2010, and Plaintiff requested a *de novo* hearing. (TR 85, 94-96.) On December 6, 2010, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Anthony Smereka. (TR 29-73.) In a January 24, 2011 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 12-24.) The Appeals Council declined to review the ALJ's decision (TR 1-4), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 14 at 8-11) and the ALJ (TR 17-22, 24) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. Defendant, in addition to adopting the facts stated in the ALJ's decision, also set forth a summary of Plaintiff's medical record. (Docket no. 16 at 6-10.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, the undersigned will incorporate the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

**IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of July 28, 2009, and that Plaintiff suffered from the following severe impairments: low average intellectual functioning and a learning disability; HIV positive; depression; status post multiple fractures of the right leg; and a history of five right knee surgeries.  (TR 14.)  Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 14-16.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he is limited to standing no more than two of eight hours, and has a restricted ability to push or pull with the lower extremities so [he] cannot use foot pedals or controls.  He also cannot do more than occasional climbing of ramps or stairs, and can never climb any ladders, ropes or scaffolds.  In addition, he can do no more than occasional balancing, stooping, kneeling, or crouching, and can never do any crawling.  Finally, he cannot do any work at unprotected heights or around dangerous moving machinery, and he requires the use of a cane or assistive device to ambulate to and from the work site.

(TR 16-22.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 23-24.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time since July 28, 2009, the date the application was filed.  (TR 12, 24.)

**V.    LAW AND ANALYSIS**

    **A.    Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper

3

legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material

5

evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed for an award of benefits under sentence four because (1) "[t]he SSA's finding that claimant is not 'disabled' is not supported by substantial evidence in the record as a whole; and (2) "[t]he residual functional capacity as stated in the hypothetical to the vocational expert does not reflect the record as a whole." (Docket no. 14 at 14-21.)

*1. The ALJ's Step-Three Determination*

In his first argument, Plaintiff challenges the ALJ's findings at step three of the sequential evaluation process. At the third step of the sequential evaluation process, a claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir.

2011)). A claimant must satisfy all of the criteria to meet a listing, or have impairments which are medically equivalent to or equal in severity and duration to the criteria of a listed impairment. *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th Cir. 2009). It is the claimant's burden to demonstrate that she meets or equals a listed impairment at the third step of the sequential evaluation process. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (TR 14.) With regard to Plaintiff's physical impairments, the ALJ briefly stated that he specifically considered Listings 1.03, 1.06, and 14.08, and that those listings were not met. (TR 14.) The ALJ then conducted a thorough discussion of Plaintiff's mental impairments under the criteria of Listings 12.04 and 12.05, and he concluded that when considered singly and in combination, Plaintiff's mental impairments did not meet or medically equal the criteria of those listings. (TR 14-16.)

Initially, Plaintiff asserts that his conditions and their underlying symptoms meet or medically equal Listings 1.02, 1.03, 12.04, and 14.08. (Docket no. 14 at 14.) With the exception of Listing 1.02, however, Plaintiff does not develop an argument or offer any analysis with regard to how the record evidence supports such a finding under Listings 1.03, 12.04, and 14.08. As Defendant points out, "[issues] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (Docket no. 16 at 13 n.3 (quoting *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003)).) "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh

7

on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Accordingly, Plaintiff's bare assertions with regard to Listings 1.03, 12.04, and 14.08 will not be addressed. Later, Plaintiff specifically contends that his impairments meet Listings 1.02 and 1.06. (Docket no. 14 at 17-19.) Plaintiff has set forth adequate arguments in this regard, which will be addressed in turn.

### a. Listing 1.02

Plaintiff argues that Listing 1.02 is met because his "testimony and [the] objective medical evidence show[] that he has chronic pain[ and] stiffness with signs of limitation of motion with involvement in one of the major peripheral weight-bearing joint[s] (knee, tibia, and fibula)." (Docket no. 14 at 18.) Plaintiff further argues that the listing is met because his condition results in an inability to ambulate effectively. (*Id.*)

> Listing 1.02, Major dysfunction of a joint, is
>
> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> > A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
> >
> > B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.02. Section 1.00 defines the term *ambulate effectively*:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a

8

> hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.*, Section 1.00B2b.

It is evident that the ALJ did not analyze Plaintiff's impairments under Listing 1.02 at step three of the sequential evaluation process. Defendant argues that "an ALJ is not required to consider every Listing or to consider Listings that the claimant 'clearly does not meet.'" (Docket no. 16 at 15 (citing *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)).) Defendant is correct; indeed, such a requirement would be absurd. The proper inquiry in this instance, then, is whether "the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing[; if so,] the ALJ should discuss that listing." *Sheeks*, 544 F. App'x at 641 (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). It is the claimant's burden to demonstrate that such a substantial question exists. *Id*. at 642.

Here, Plaintiff asserts that the record reflects that he has endured continuous surgeries and that he suffers from pain and swelling in his right knee and lower extremity as a result of being hit by two high-speed vehicles in July of 2005. (Docket no. 14 at 16.) Plaintiff then makes several citations to his medical record, most of which, however, involve issues with the tibia and fibula bones in his right leg. Such issues are irrelevant to an analysis of Listing 1.02,

9

which concerns the function of a claimant's joints (i.e., hip, knee, or ankle). The knee-related medical records that Plaintiff highlights reveal complaints of pain, mild soft-tissue swelling, crepitating knee, arthritis, a limp on the right side, and use of a cane for balance and support. (TR 43-44, 756, 839, 967.) But those records do not indicate the existence of any of the criteria required to meet Listing 1.02, such as a gross anatomical deformity of a joint, limitation of motion, or joint space narrowing.

Plaintiff also asserts that he is unable to ambulate effectively as required by Listing 1.02A. (Docket no. 14 at 18.) In this regard, Plaintiff relies upon his subjective complaints that he made in his hearing testimony and his function report. For example, Plaintiff testified that he could only walk back and forth past two to three houses on a block before he needed to sit down. (TR 43.) He also stated that he walks slow and needs help crossing the street, that he has difficulty climbing the stairs, and that he has used and/or uses a cane, crutches, and a brace to assist with ambulation. (TR 209, 211, 212.) Nevertheless, these complaints do not indicate that Plaintiff is unable to ambulate without the use of a hand-held assistive device that limits the functioning of both upper extremities as defined and required by Listings 1.00B2b and 1.02. Plaintiff has failed to demonstrate that the record raises a substantial question as to whether he could qualify as disabled under Listing 1.02 such that the ALJ's failure to consider that listing in his step-three determination would constitute reversible error. Accordingly, Plaintiff's Motion should be denied with regard to this issue.

      b.     <u>Listing 1.06</u>

Under Listing 1.06, Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones, a claimant must demonstrate that his impairment(s) meets or medically equals the following criteria:

    A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid; and

    B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.06.

To support his position that his impairments meet or medically equal Listing 1.06, Plaintiff explains that he suffered tibial and fibular fractures in his right leg as a result of the July 2005 accident. (Docket no. 14 at 19 (citing TR 248).) He then directs the Court to the written results of four x-rays of his right knee taken on July 16, 2009. (*Id*. (citing TR 756).) As Plaintiff points out, the findings of those x-rays reveal, in part, an old traumatic deformity of the right proximal tibia and mild soft tissue swelling in the suprapatellar region. (TR 756.) Plaintiff argues that "[a]lthough[] a solid union not being formed is not evident in the records, it can be argued that any deformity and swelling being present is evidence that a solid union was not formed." (Docket no. 14 at 19.) But, as Defendant points out, Plaintiff does not cite to any medical opinion or case law to support such an argument. (*See* docket no. 16 at 19.) Additionally, as discussed *supra*, Plaintiff has failed to establish an inability to ambulate effectively. Without more, Plaintiff's unsubstantiated argument cannot establish that his impairment(s) meet the criteria of Listing 1.06 or that the ALJ erred in concluding that the Listing was not met. Plaintiff's argument fails in this regard.

    2.    *The ALJ's RFC Assessment and Hypothetical Questions to the VE*

In his second argument, Plaintiff asserts that the ALJ's hypothetical question posed to the VE did not adequately portray Plaintiff's residual functional capacity. (Docket no. 14 at 19.) Plaintiff further asserts that the hypothetical questions failed to paint an accurate picture of his disability and made no mention of Plaintiff's depression, headaches, sleep disturbances, or

11

inability to stand or distance walk. (*Id*. at 20.) To support this argument, Plaintiff relies on the subjective complaints that he made in his hearing testimony and his function report.[1] But the ALJ is only required to incorporate in a claimant's RFC (and the hypothetical questions to the VE) those limitations that the ALJ finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location,

---

[1] Notably, Plaintiff does not challenge the ALJ's assessment of the medical opinion evidence.

duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ considered Plaintiff's hearing testimony and function report in conjunction with the medical evidence, and he found that Plaintiff's statements were not entirely credible. (TR 18.) In reaching this determination, the ALJ reasoned that Plaintiff's treating records did not support his complaints to the extent they would preclude restricted work and that Plaintiff's hearing testimony was inconsistent with his previous complaints. (TR 17.) The ALJ noted that Plaintiff visited the emergency room in 2009 for pain in his right leg after dancing at the club and then running out of Tylenol. (TR 19.) The ALJ also reasoned that the credibility of Plaintiff's pain complaints was questionable due to reports in his medical records that Plaintiff requested Vicodin, alleging that he hadn't received any in three months, but the pharmacy confirmed otherwise. (TR 19.) Additionally, the ALJ pointed out Plaintiff's testimony in which he stated that he did not have a drinking problem even though his physicians had begged him to get treatment for alcoholism. (TR 20.) The ALJ also pointed out that Dr. Jerry Csokasy, Ph.D. found Plaintiff's credibility to be questionable with regard to reporting of symptoms because his statements about hearing voices were unsubstantiated. (TR 21 (citing TR 985).) Lastly, the ALJ questioned Plaintiff's credibility due to the inconsistency of his statements to his doctors with his hearing testimony, Plaintiff's refusal to undergo recommended treatment, and his noncompliance with and abuse of prescribed medication. (TR 22.)

The immediate discussion demonstrates that the ALJ set forth numerous legitimate reasons for discrediting Plaintiff's hearing testimony and written statements in his decision, some of which apply the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).  Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight.  The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence.  And in properly finding Plaintiff's subjective complaints regarding his inability to stand, inability to distance walk, depression, sleep disturbances, and headaches to be less than credible, the ALJ was not required to include them in Plaintiff's RFC or in his hypothetical questions to the VE.  Accordingly, Plaintiff's argument fails.

Furthermore, it is evident that the ALJ considered each of Plaintiff's severe impairments in developing Plaintiff's RFC.  He then incorporated Plaintiff's physical impairments into the RFC by limiting Plaintiff to restricted light work.  Next, the ALJ incorporated all of the limitations of the RFC assessment into the hypothetical questions that he posed to the VE.  (*Compare* TR 16-17 *with* TR 67-69.)  The ALJ, however, did not include any limitations in the RFC related to Plaintiff's severe mental impairments.  To the extent that this omission constitutes error, the error is harmless, as the ALJ incorporated additional limitations into his hypothetical questions that were not included in the RFC assessment:  a necessity to learn by demonstration, no more than occasional contact with coworkers, and no contact with the public.  (TR 68, 70-71.)  These limitations account for Plaintiff's low average intellectual functioning, learning disability, and depression, and they are similar to those assessed by the consultative examiners.  Finally, the VE testified that there were unskilled jobs at the light and sedentary levels existing in significant numbers that an individual with these limitations could perform.

(TR 68-71.) Thus, Plaintiff's Motion with regard to the RFC assessment and the hypothetical questions should be denied.

## VI. CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 14) and GRANT Defendant's Motion for Summary Judgment (docket no. 16).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 22, 2016    s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: February 22, 2016    s/ Lisa C. Bartlett
Case Manager